**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

TIMOTHY L. WHITE,

        *Plaintiff*,

v.

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant*.
_____/

CASE NO. 2:18-cv-12487
DISTRICT JUDGE SEAN F. COX
MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (R. 9 & 12)

**I.    RECOMMENDATION**

Plaintiff Timothy L. White appeals Defendant Commissioner of Social Security's denial of his claim for disability benefits. (R. 1.) Both sides have moved for a remand, agreeing that the decision by the administrative law judge (ALJ) was faulty because it failed to fully address Plaintiff's post-traumatic stress disorder. (R. 9, 12, 13.) The lone disagreement is whether a different ALJ should be assigned to the case on remand due to the present ALJ's alleged bias. Because Plaintiff has failed to demonstrate bias, I recommend **GRANTING** Defendant's motion (and Plaintiff's motion in part, to the extent it seeks remand rather than outright reversal and an award of benefits), (R. 9, 12), **VACATING** the Commissioner's final decision denying benefits, and **REMANDING** the case to the Commissioner under "sentence four" of 42 U.S.C. § 405(g) without ordering that a new ALJ handle the case.

1

**II.   REPORT**

  **A.   Background Law and Facts**

Because the parties agree to remand, a detailed recitation of the facts and general law is unnecessary. Briefly, a district court reviews the Commissioner's final administrative decisions under 42 U.S.C. § 405(g) to determine whether the correct legal standards were applied and the factual findings were supported by substantial evidence. *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014). If the Commissioner's decision is backed by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

To obtain benefits, a claimant must have a "disability," which is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" for a period that has lasted or will last for at least 12 months. 42 U.S.C. § 1382c(a)(3)(A). The Commissioner determines disability through a five-step sequential process requiring consideration of the following: (1) whether the claimant is engaging in substantial gainful activity; (2) whether the impairments are severe; (3) whether the impairments meet or medically equal a listed impairment; (4) what the claimant's residual functional capacity (RFC) is and whether he or she can engage in past relevant work; and (5) whether a significant number of jobs exist in the national economy that the claimant could perform. 20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). The RFC "is the most [the

claimant] can still do despite [his or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Here, Plaintiff applied for Title II disability insurance benefits (DIB) on October 27, 2015. (R. 7, PageID.172.)[1] The primary basis for his disability claim is PTSD resulting from his time in the Marines. (R. 9, PageID.419; *see also* R. 7, PageID.62-63, 190, 225, 262.)[2] In particular, he was onsite in Beirut in 1983 when the Marine barracks were bombed. (R. 7, PageID.63, 68-69.) He also lost friends in Brazil who were murdered while on leave, as well as others who died during training exercises, although he was not present

---

[1] The ALJ's decision dates the application on October 26, 2015, (R. 7, PageID.33), as does Plaintiff's brief, (R. 9, PageID.418), and the Commissioner's initial denial form, (R. 7, PageID.92). The application in the record, however, is from a day later. (R. 7, PageID.172.)

[2] As Plaintiff explained, he also experienced a torn biceps tendon in 2015 requiring surgery. (R. 7, PageID.262; R. 9, PageID.419.) The ALJ noted the biceps injury but determined that it was not a "severe" impairment at Step 2. (R. 7, PageID.35.)

3

at any of these events. (R. 7, PageID.63-64.)

At the time of his application, he struggled with social interactions and stressful conditions, suffered from flashbacks and disrupted sleep, and had trouble concentrating, remembering, and completing tasks. (R. 7, PageID.225-226, 230.) He received treatment for his condition from Dr. Nihal Saran, and had been granted a 70-percent disability rating by the Department of Veterans Affairs. (R. 7, PageID.253-254.) Dr. Nihal concluded that Plaintiff was "totally and permanently disabled from any job." (R. 7, PageID.254; *see also* R. 7, PageID.268.) A consulting psychologist, Dr. Gayle Oliver-Brannon, diagnosed PTSD, anxiety disorders, and depression, concluding that "[e]mployment does not seem to be a viable option in light of [Plaintiff's] mental health issues at this time and any attempts at future employment may require some restrictions or accommodations at the work site." (R. 7, PageID.404.) However, an assessment by Dr. Patricia A. Wallace, undertaken for VA benefits, determined that Plaintiff had PTSD but was not impaired. (R. 7, PageID.359, 365.)

The Commissioner denied Plaintiff's claim at the initial stage, and Plaintiff requested a hearing, which was held on August 15, 2017 before ALJ Terry M. Banks. (R. 7, PageID.92, 112.) At the hearing, the ALJ and Plaintiff had the following exchange, which forms the basis for the current claim of ALJ bias:

> Q [ALJ]:   You're diagnosed with PSTD [*sic*]. What are your PSTD [*sic*] symptoms?
>
> A [Plaintiff]: Nightmares, vision, reliving, regrets.
>
> Q:   What are you reliving?

4

> A:  Well now that I've come to realize that these problems I had of these people that I lost, ultimately you have to relive this. You have to find some kind of solution, some kind of happy medium. Although I don't think you can ever resolve it, but I know when I lost 243 marines and servicemen [in Beirut], I felt shame and guilt. I could've done more. Why wasn't I doing more. I had friends even after the fact.
>
> Q:  Were you in the dorm that was bombed?
>
> A:  No, Sir, I was guarding just past the dorm. We weren't even allowed to load our rifles when we were there, and if that's all the government felt about us, well I have troubles with that too and here it is 35 years later, no one even acknowledges Beirut. You don't hear nothing about it. There's nothing in the history books that documents - -
>
> Q:  Well we got a lot of water under the dam since 1982.[3]
>
> A:  I'm not disputing that.
>
> Q:  It's lightening for space with a lot of events after that have happened since then. . . .[4]

(R. 7, PageID.63.)

---

[3] The bombing occurred in October 1983, not 1982. *See* Dep't of Defense Comm'n on Beirut Int'l Airport Terrorist Act, Oct. 23, 1983, *Report* (Dec. 20, 1983), *available at* http://citeseerx.ist.psu.edu/viewdoc/download?doi=10.1.1.226.1497&rep=rep1&type=pdf (last accessed Mar. 4, 2019).

[4] In Plaintiff's brief, counsel makes two "representations" about the dialogue that do not appear on the face of the administrative record: "first, the statement by the ALJ about water under the dam was accompanied by an audible chuckle; second, the transcript in the next comment by the ALJ shows 'lightening' when the ALJ actually said fighting." (R. 9, PageID.419 (emphasis removed).) But in a case like the present, where remand is sought based on the Commissioner's error rather than on new evidence that subsequently came to light, the Court is constrained to reviewing the record as it exists, without supplementation by the unsworn statements or declarations of counsel. 42 U.S.C. § 405(g); *Miller v. Comm'r of Social Sec.*, 811 F.3d 825, 839 (6th Cir. 2016) (noting that courts reviewing agency action can consider evidence outside the record only in limited circumstances, such as for background information, but cannot let the evidence transform the review into a trial de novo); *see also Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 436 (6th Cir. 2010) ("[A]nd 'any alleged prejudice must be evident from the record and cannot be based on speculation or inference.'" (citation omitted)). Even so, neither of counsel's "representations" would change the recommended outcome. The ALJ's unrecorded fleering would amount to a "demeaning and discourteous manner" that should be discouraged but would not justify finding bias. *Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 364 (6th Cir. 2004). Correcting the possible mistranscription of "fighting" does not make bias more or less likely, but only clarifies the ALJ's statement.

In a decision handed down December 6, 2017, the ALJ found that Plaintiff's only severe impairment was anxiety disorder. (R. 7, PageID.23.) The ALJ analyzed the impairment under listing § 12.06, which deals with anxiety and obsessive-compulsive disorders, ultimately concluding that Plaintiff did not meet or equal the listing. 20 C.F.R. pt. 404, subpt. P, App. 1-Part-A2, § 12.06. (R. 7, PageID.36-38.) The RFC left Plaintiff with enough capacity to perform a significant number of jobs in the national economy, thus resulting in the ALJ's determination that he was not disabled. (R. 7, PageID.38-43.)[5] In reaching this outcome, the ALJ brushed aside Dr. Saran's and Dr. Oliver-Brannon's opinions, according them little weight because they failed to offer greater explanation. (R. 7, PageID.40-41.)

Plaintiff asked the Appeals Council to review the ALJ's decision and, if remand was ordered, send the case to a different ALJ. (R. 7, PageID.166, 168.) The reason for the request was the ALJ's statement about the Beirut bombing, which "improperly downgraded this military incident" and was "inappropriate regarding the underlying trauma that triggered claimant's mental illness." (*Id.*) The Appeals Council denied review on June 22, 2018, (R. 7, PageID.21), and Plaintiff filed the present lawsuit on August 10,

---

[5] The RFC states that Plaintiff can

> perform a full range of work at all exertional levels but with the following non-exertional limitations: With respect to understanding, remembering and carrying out instructions, he is limited to performing simple and routine tasks; With respect to the use of judgment, he is limited to simple work-related decisions; There should be no more than occasional changes in the workplace setting, and any changes should be well explained in advance; He should be limited to occasional contacts with supervisors, and occasional and superficial contacts with co-workers and members of the public. By "superficial" I mean that verbal interaction is not necessary for the completion of the assigned duties.

(R. 7, PageID.38.)

2018. (R. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, (R. 2), this case was referred to me to review the Commissioner's final decision.

### B. Remand

In his motion for summary judgment, Plaintiff argues that the ALJ employed the wrong listing, using § 12.06 rather than § 12.15, and ignored relevant evidence in the listing analysis. (R. 9, PageID.423-425.) Further, according to Plaintiff, the ALJ disregarded the VA disability determination and also the findings by Dr. Saran. (R. 9, PageID.425-426.) Defendant appears to agree, moving for a remand under "sentence four" of 42 U.S.C. § 405(g)[6] so that the ALJ can

> evaluate the severity, onset, and limited effects of the claimant's posttraumatic stress disorder (PTSD); re-evaluate the severity of the claimant's mental impairments as set forth in 20 C.F.R. § 404.1520a, with consideration of listing 12.15; evaluate the opinion evidence, particularly the VA rating determination and opinion from Dr. Saran in Exhibit 9E [*i.e.*, R. 7, PageID.253-254]; re-assess the claimant's residual functional capacity; proceed through the sequential evaluation process as needed and appropriate; take any further action to complete the administrative record; offer the claimant the opportunity for a hearing; and issue a new decision.

(R. 12, PageID.438-439.)

The parties' agreement on the merits should be respected and the case remanded for a redo. As both sides suggest, the ALJ picked the wrong listing to analyze at step three. While the listing he employed, § 12.06, previously had been applicable to PTSD, at the

---

[6] A "'sentence four' remand involves a substantive ruling by the court as to the correctness of the Commissioner's decision and a subsequent remand for further proceedings in light of that determination." *Glasco v. Comm'r of Soc. Sec.*, 645 F. App'x 432, 434 n.1 (6th Cir. 2016).

7

time of the decision a new listing applied, § 12.15. Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,138, 66,159 (Sept. 26, 2016).[7] It is true that the two listings are similar: each require the claimant to meet "A" criteria and either "B" or "C" criteria, and the latter two categories are identical in both listings. 20 C.F.R. pt. 404, subpt. P, App. 1-Part-A2, §§ 12.06, 12.15. Thus, the error might have been harmless if the ALJ's analysis of the "B" or "C" criteria was adequate; but it was not. Much of the ALJ's reasoning is obscured by unspoken logical leaps that need to be bridged. For example, one leg of his analysis relies entirely on statements in Plaintiff's Adult Function Report, which the ALJ cites but fails to assess, instead following the recounting of the statements with his conclusion regarding Plaintiff's capacities. (R. 7, PageID.36-37.)[8] And the discussion of "C" criteria cites nothing at all to justify its result. (R. 7, PageID.37-38.)

In addition to being conclusory, the ALJ's listing discussion is also undercooked, excluding relevant considerations such as the evidence in Dr. Saran's notes, a serious

---

[7] The new listing reflected developments in the diagnosis of PTSD, which had previously been assessed under the anxiety-related disorders category of § 12.06. *Id.* However, the leading diagnostic manual recently "created a separate diagnostic category for trauma- and stressor-related disorders," leading the Commissioner to promulgate the new listing. *Id.*

[8] The entire analysis of one functional area is as follows:

> In an Adult Function Report, the claimant noted that he is able to drive a car, but has difficulty following written and spoken instructions, and he gets upset when things do not go well. (Exhibit 5E at 7-9.) Therefore, the evidence supports a finding that the claimant has moderate limitations in the ability to understand, remember, or apply information due to his mental impairments.

(R. 7, PageID.36.) Why are these facts, such as the ability to drive, relevant to understanding, remembering, or applying information? And how do they support moderate, as opposed to severe or mild, limitations in these functions? The ALJ's assessment of other functional areas is similarly lackluster. (R. 7, PageID.36-37.) An appropriate analysis would consider whether the facts adduced are relevant to the function being analyzed—*i.e.*, do they have some characteristic making it more or less likely that the claimant has a particular functional capacity?—and the magnitude of the relationship—*i.e.*, given the existence of the evidence, how much more or less likely is it that the claimant has a certain level of functional capacity?

8

oversight if, as Plaintiff asserts, Dr. Saran was a treating physician. (R. 9, PageID.419.) If so—and the Court takes no position on the issue—then the physician's medical opinions on the nature and severity of Plaintiff's impairments were entitled to controlling weight if they were "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Even if Dr. Saran was not a treating source, her opinions needed to be weighed under the six-factor test laid out in 20 C.F.R. § 404.1527(c). That test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544.

The ALJ's analysis here does not meet any of these standards. Instead, it summarily concludes that Dr. Saran's opinion is entitled to little weight because it "gave no functional analysis, no explanation for the claimant's inability to work, and his notes do not reflect signs or symptoms of a disabling condition." (R. 7, PageID.40.) All of these rationales might constitute good reasons for rejecting Dr. Saran's opinion if they were bolstered by more than the ALJ's *ipse dixit*; by an analysis of the notes, for example. No such explanation appears in the decision.

Finally, the ALJ did not address the VA disability determination, except to mention that Plaintiff received VA benefits. (R. 7, PageID.39.) While the ALJ was not bound by the VA decision, he "must at least consider a VA's disability decision and explain the

reasons for the weight [he] assigns to it." *Joseph v. Comm'r of Soc. Sec.*, 741 F. App'x 306, 310 (6th Cir. 2018). The ALJ failed to do so here, adding yet another reason to remand.

Given the flaws in the ALJ's decision, and the parties' agreement to remand, the case should be sent back to the Commissioner under "sentence four" of 42 U.S.C. § 405(g) for reconsideration.

### C. New ALJ on Remand

This leaves the only point of contention in the case: whether, on remand, a different ALJ should be assigned. Plaintiff contends that the ALJ minimized the Beirut bombing at the hearing. (R. 13, PageID.445.) After Plaintiff lamented that the event was not well remembered, the ALJ suggested—callously, in Plaintiff's view—that a lot had happened since the bombing. (R. 7, PageID.63.) To Plaintiff, this comment was "belittling," "downgrading the very severe trauma that triggered the condition and thus further striking at Plaintiff's belief that this is a forgotten event—a fact which distresses him even more and which is actually borne out by the very conduct of the ALJ." (R. 13, PageID.446.)

When a federal court remands a case, the Appeals Council has discretion to render a decision or assign an ALJ for further proceedings. 20 C.F.R. § 404.983; *Travis v. Sullivan*, 985 F.2d 919, 924 (7th Cir. 1993) ("To whom a case should be remanded is generally within the province of the Secretary's responsibility."); *Harris v. Comm'r of Soc. Sec.*, No. 16-cv-10908, 2017 WL 2603978, at *2 (E.D. Mich. Mar. 29, 2017) (same). This includes the decision whether to select a new ALJ. *Travis*, 985 F.2d at 924. Generally, the case returns to the ALJ who issued the first decision. *See* 4 Soc. Sec. Law & Prac. § 53:60 (2019).

10

Courts will intervene in this decision, however, if the original ALJ was biased or partial. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996) ("If there is sufficient evidence of bias to entitle the claimant to review by a different administrative law judge . . . then the transfer of the case to a different administrative law judge is an automatic consequence of reversal."); *Card v. Astrue*, 752 F. Supp. 2d 190, 191 (D. Conn. 2010) ("Courts may interfere with the Commissioner's decision [to select a different ALJ] only upon a showing of bias or partiality on the part of the original ALJ."). In such cases, remand to another ALJ is appropriate. *Summers v. Commissioner of Soc. Sec.*, No. 4:15-cv-10550, 2016 WL 3769377, at *10 (E.D. Mich. June 2, 2016), *rep. & rec. adopted by* 2016 WL 3743145 (E.D. Mich. July 13, 2016); *Joe v. Apfel*, No. 97–CV–772S(H), 1998 WL 683771, at *5 (W.D. N.Y. July 10, 1998) ("Where the record clearly demonstrates the ALJ's bias or partiality toward the claimant, the courts have not hesitated to direct the Commissioner to transfer the remand hearing to a different ALJ."), *judgment amended on other grounds by* 1998 WL 726262 (W.D. N.Y. Oct. 2, 1998). The regulations account for bias by prohibiting a prejudiced or partial ALJ from conducting a hearing and allowing claimants to object to any such individual from overseeing the proceedings. 20 C.F.R. § 404.940. This regulation can be employed after a remand. *See Joe v. Apfel*, 1998 WL 683771, at *6 ("I do not find sufficient evidence of bias to warrant overriding the administrative process on remand. Instead, I find it appropriate to recommend that plaintiff follow the procedures outlined in 20 C.F.R. § 404.940, and that the Commissioner consider transferring any remand hearing

to a different ALJ.").[9]

In addressing bias claims, courts presume that the ALJs "'exercise[d] their power with honesty and integrity.'" *Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 363 (6th Cir. 2004) (citation omitted). The party asserting bias must overcome this presumption with convincing evidence, based on the record and not speculation, that a risk of bias or prejudgment exists. *Id.* "In addition, any claim of bias must be supported by a '*strong showing*' of bad faith." *Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 436 (6th Cir. 2010) (citation omitted). Displays of "'deep-seated and unequivocal antagonism that would render fair judgment impossible'" will establish bias. *Bergschwenger v. Comm'r of Soc. Sec.*, No. 11–11752, 2012 WL 4009916, at *15 (E.D. Mich. Aug. 20, 2012) (citation omitted), *rep. & rec. accepted by* No. 11-11752 (E.D. Mich. Sept. 12, 2012). "*Not* establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display." *Liteky v. United States*, 510 U.S. 540, 555-556 (1994).

The ALJ's statement about the Beirut bombing was graceless and gratuitous; it did not, however, betray bias requiring the Court's intervention. Although the bombing is a

---

[9] Allegations of bias can be waived if the claimant fails to object. *Wells v. Apfel*, 234 F.3d 1271, 2000 WL 1562845, at *6 (6th Cir. 2000) (unpublished); *Woodworth v. Comm'r of Soc. Sec.*, No. 16-10758, 2017 WL 1190951, at *2 (E.D. Mich. Mar. 31, 2017). Under the regulations, the objection must be lodged with the Commissioner at the claimant's "earliest opportunity." 20 C.F.R. § 404.940. Here, Plaintiff did not request the ALJ's removal at the hearing, but he raised the issue to the Appeals Council, which was the first formal opportunity to do so. Consequently, the Court will treat the issue as preserved. *Cf. Wells*, 2000 WL 1562845, at *6 (finding waiver when the plaintiff failed to request removal and did not flag the issue for the Appeals Council); *Millmine v. Sec'y of Health & Human Servs.*, 69 F.3d 537, 1995 WL 641300, at *2 (6th Cir. 1995) (unpublished) ("Absent good cause, failure to raise the issue of bias before the Secretary constitutes waiver of the right to raise the issue on appeal.").

key event at the core of Plaintiff's PTSD, the ALJ's narrow point was that the episode was not well remembered because so much else had happened. At worst, this implies that other events deserve greater historiographical prominence—it does not suggest, though, that the ALJ believed the trauma of surviving a bombing could be sloughed off without any disabling emotional scars. And it says nothing about the effects the bombing had on Plaintiff, in particular. In other words, the ALJ could believe what he said and still find, without any inconsistency, that Plaintiff's PTSD was disabling. Thus, nothing in the ALJ's dialogue smacks of deep-seated antagonism towards Plaintiff. *See Bergschwenger*, 2012 WL 4009916, at *15.

While Plaintiff tries to link the flaws in the ALJ's decision to supposed bias, more likely the errors resulted from a run-of-the-mill rush job that can be remedied by better effort on remand. Skimming over evidence, applying the wrong listing, and skimping on analysis all can occur without bias. Consequently, Plaintiff's request for a new ALJ should be denied.

### D.    Conclusion

For the reasons above I recommend **GRANTING** Defendant's motion (and Plaintiff's motion in part), (Doc. 9, 12), **VACATING** the Commissioner's final decision denying benefits, and **REMANDING** the case to the Commissioner under "sentence four" of 42 U.S.C. § 405(g) without ordering a new ALJ handle the case.

### III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and

file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 8, 2019                                S/ PATRICIA T. MORRIS
                                                   Patricia T. Morris
                                                   United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: March 8, 2019                               By s/Kristen Castaneda
                                                  Case Manager